**BURLINGTON SAV. BANK OF BURLINGTON, VT., v. ROCKWELL et al.***

Circuit Court of Appeals, Ninth Circuit.
March 11, 1929.

No. 5601.

E. J. Frawley and Chas. F. Koelsch, both of Boise, Idaho, for appellant.

*Rehearing denied April 15, 1929.

B. W. Oppenheim, J. M. Lampert, and J. H. Richards, all of Boise, Idaho, for appellees Rockwell and Rising.

Before RUDKIN and DIETRICH, Circuit Judges, and BEAN, District Judge.

BEAN, District Judge. This is a suit by the Burlington Savings Bank of Burlington, Vt., to recover on a joint and several promissory note for $32,000, dated February 28, 1923, payable to its order six months after date, and executed by Thomas D. Perry, Janet B. Perry, E. W. Rising, and Irvin E. Rockwell, and to foreclose a lien on certain collateral pledged as security for the payment of the note. Mrs. Perry is not made a party to the suit.

The defendants Rising and Rockwell answered jointly and admit the execution of the note, the amount unpaid thereon, the pledge of the collateral, all as set out in the complaint, but allege in substance that the note was executed and delivered in pursuance of and as part of a contemporaneous agreement between the parties, by which the plaintiff stipulated and agreed that in the event of the execution of the note in suit by the makers thereof it would, as soon as it obtained title through foreclosure of mortgages held by it on the Wood river lands in Idaho, and other lands in which the joint interest of the plaintiff and the Blaine County National Bank was involved, "escrow" such land as security for payment of the note in suit, subject to any interest which it might have therein on account of its mortgages, and the costs and expenses of foreclosures. That in accordance with such arrangement the note in suit was made and the plaintiff acquired title by foreclosure to the Wood river land in December, 1924, and that known as the Armstrong land in June, 1926, but it has failed and neglected to place any of such lands in escrow as security for the note in suit, but has retained the title, ownership, control, and management of the property.

From the testimony it seems that there was a financial depression in the Wood river country at the times herein involved. The plaintiff was the holder of a large number of mortgages on land in that country, among others a note and mortgage of the Wood River Land Company for $32,000, dated October 1, 1920, and another of Armstrong for $5,000, dated July, 1919. The defendant Thomas D. Perry was its agent and business representative in that country. Perry was also president of local banking institutions, and particularly of the Blaine County National Bank. The Blaine County National Bank had a considerable amount of frozen assets secured by liens on property covered by prior mortgages in favor of the plaintiff. Early in February, 1923, the defendant Rockwell, representing the Blaine County National Bank, and his codefendants, went to Burlington for a conference with the plaintiffs for the purpose of arriving at some adjustment of their affairs. After several conferences, an agreement or understanding was reached, which was subsequently reduced to writing by Rockwell, and approved by the president of the plaintiff, and which as far as material here is as follows:

"Today therefore, Wednesday, February 14th, the following adjustment is proposed, understood and agreed upon. * * * That upon receipt of a properly drawn note at twelve months for the sum of $32,000.00 more or less, at 6% per annum (as may be found after audit and adjustments if any are completed and balance brought down) and signed by Mrs. Frank W. Perry, T. D. Perry, I. E. Rockwell and E. W. Rising, with no restrictions as to other names if desired; the proceeds to be used for the purchase from the Blaine County National Bank the following items, subject to any adjustment the condition may require: R. B. Merrill, $3,716.00; T. B. Perry and wife, $5,346.00; E. P. Armstrong, $4,274.00; Wood River Land Co., $6,195.74; Wood River Land Stock, $12,590.00. The foregoing items to be held as collateral for the liquidation of said note of $32,000.00 more or less, as fast as proceeds arising from the sale or disposition of the land or the payment of said items. Appropriate agreements will be executed for the extension of said Perry-Rockwell $32,000 note over a period of 'on or before 7 years' by the Burlington Savings Bank, together with agreements to authorize the foreclosure of the $32,700.00 loan of the Wood River Land Company which, when concluded and the fee resting with said bank, it will agree to escrow to the said Perry-Rockwell note or their assigns the said land of the Wood River Land Company for an amount equal to the mortgage plus any interest and expenses of foreclosure; the same procedure to apply in all or any other foreclosures where joint interests of the Blaine County National Bank and the Burlington Savings Bank are involved. The purpose and idea of the foregoing procedure being for the makers of the Perry-Rockwell note to be able to recoup themselves through the orderly work-out of the equities involved or resulting from the foreclosure process during the seven year term."

In pursuance of this arrangement and to accomplish its purpose, the note in suit was executed by the defendants and delivered to the plaintiff, and the proceeds thereof used to take out of the Blaine County Bank the frozen assets referred to, and they were delivered to the plaintiff as collateral security for the payment of the note.

In May of 1923, the plaintiff commenced a suit to foreclose the mortgage on the Wood river land, and such proceedings were thereafter had that it thereby acquired title to the land in December, 1924. It commenced a like suit in December, 1924, to foreclose the mortgage on the Armstrong property, and through such proceedings acquired title in June, 1926. These suits were brought and prosecuted to final determination without objection from the defendants or the Blaine County National Bank, and without any assertion by them of their right or interest in or liens on the property. Since obtaining title the plaintiff has sold a small portion of the Wood river land, and has managed, controlled, and received the rents and profits of the remainder.

■ The court below ruled that the plaintiff, by its conduct in electing to retain the lands, "requires the application of the principle of estoppel, and also constitutes payment and discharge of the note," and entered a decree in favor of the defendants.

In this ruling we think the learned court below was clearly in error. An estoppel arises where one by his conduct induces another to believe in the existence of a certain state of facts, and the other acts thereon to his prejudice, in which case the former is estopped as against the latter to deny that such a state of facts did in fact exist. 21 C. J. 1060. There is no room for the application of the principle here. Plaintiff made no representations to the defendants concerning its claim of title to the property after it had been acquired, nor did defendants alter their position in any way relying on any such representations or on the fact that the plaintiff had taken title to the property in its own name. The most that can be said of plaintiff's conduct is that it was a breach of its contract, but this would not relieve defendants from liability on their note or estop the plaintiff from asserting such liability.

■ We come then to the alleged contract of February 14, 1923, and its legal effect.

The plaintiff claims that the writing prepared and approved by the parties is not a contract, but a mere memorandum of conversations between them, and was never formally executed as a contract. It is apparent, however, that the writing embodies an agreement actually made and entered into by the parties. Their approval is appended thereto. It has been partially executed. The defendants, in reliance thereon, made and delivered to plaintiff the promissory note in suit. The plaintiff, as it agreed to do, proceeded to foreclose the Wood river and Armstrong mortgages, and the defendants, presumably relying on the contract, permitted it to thus acquire title to such properties without asserting any right to or interest therein. The contract is manifestly uncertain in many particulars and would probably not be enforceable as an executory agreement, but in our judgment it should be enforced as far as can be done in view of the part execution thereof by the parties.

■ The plaintiff has invoked the aid of a court of equity. The court may therefore, we think, require it to do equity by fully complying with its agreement concerning the Wood river and Armstrong lands by decreeing that it holds said lands as security for the payment of the note in suit, subject to any valid charges it may have thereon. If there is any equity therein remaining after the plaintiff's claim is satisfied, the value thereof should be applied on the note.

It is intimated in the record that plaintiff's claim on these lands should be limited to the amount standing on its books against them on August 1, 1925, the date on which plaintiff first demanded payment of the note in suit from the answering defendants; but the defendants made no tender or offer to pay the balance due after crediting such amount, but permitted plaintiff to thereafter manage and control the property, pay the taxes, etc., and expenses of maintaining and operating the same, and to receive the income therefrom.

The accounting should, in our judgment, proceed on that basis. In such accounting the plaintiff should be credited with the amount of its decrees against the Wood river and Armstrong properties, respectively, and costs and expenses of foreclosure, the taxes paid by it, the expenses of upkeep and maintenance of the properties, and any other legitimate expenses incurred in connection therewith, with legal interest on such items, and be charged with whatever it has received from the sale of a portion of the property and as rents or incomes or otherwise from the remainder, and interest on such items.

The decree of the court below is therefore reversed, and the case remanded to that court to take an accounting as indicated to ascertain and determine the amount legally

30

chargeable in favor of the plaintiff against the Wood river and Armstrong lands, respectively, and after so doing to order and decree a judicial sale of the collateral pledged as security for the note in suit, and also the Wood river and Armstrong lands. The proceeds from the sale of the collateral to be applied on the promissory note in suit and likewise the surplus of the proceeds of the sale of the Wood river and Armstrong lands, after first paying the costs of the sale and plaintiff's liens or claims thereon as ascertained and found by the court, and if such surplus is not sufficient to pay the note, to render judgment in favor of the plaintiff against the defendants for the balance and its costs. If, however, no bona fide bid or offer for either the Wood river or Armstrong lands be received at the proposed sale thereof, in excess of plaintiff's claim or lien thereon as found or ascertained by the court in the accounting, and the costs of the sale, no sale shall be made, but the title to such lands shall be decreed to be in the plaintiff.

Decree reversed, and case remanded.